UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE DE JESUS DURAN MORENO, | Case No.  1:26-cv-02249-JLT-HBK (HC) |
| Petitioner, | FINDINGS AND RECOMMENDATIONS TO GRANT PETITION FOR WRIT OF HABEAS CORPUS[1] |
| v. | |
| U.S. ATTORNEY GENERAL, et al., | (Doc. 1) |
| Respondents. | |
| | FIVE-DAY OBJECTION PERIOD |

Petitioner Jose de Jesus Duran Moreno, an immigrant detainee in U.S. Immigration Customs and Enforcement ("ICE") custody at the California City Immigration Processing Center in California City, California, initiated this action by filing a pro se petition for writ of habeas corpus under 28 U.S.C. § 2241 on January 9, 2026.  (Doc. 1, "Petition").  Liberally construed, the Petition raises four grounds for relief: (1) Petitioner is "lawfully" in the United States because he was approved for Temporary Protected Status ("TPS"); (2) his detention without a bond hearing violates his procedural due process rights under the Fifth Amendment; (3) his "indefinite" detention violates his substantive due process rights; and (4) the conditions of his detention are

---

[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).

harmful to his mental and physical health.  (*Id*. at 6-7).  As relief, Petitioner seeks, *inter alia*, immediate release from custody.  (*Id*. at 7).  On May 15, 2026, Petitioner moved for temporary restraining order, which assigned district judge denied as untimely on May 18, 2026.  (Docs. 9, 10).

Respondents file a two-page response arguing the Court should deny the Petition because (1) Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2) as an "applicant for admission," and thus is ineligible for a bond hearing; and (2) Petitioner "does not possess a right to freedom from immigration detention in any form other than the form provided by Congress." (Doc. 6 at 1-2).  Petitioner did not file a reply, and the deadline to do so has passed.  (*See* docket).

Significant here is Petitioner's status as a Venezuelan citizen who was detained at the border and later released.  For the reasons below, the undersigned recommends that the district court grant the Petition on Petitioner's procedural due process claim (claim two).[2]

## I.    BACKGROUND

Petitioner is a native and citizen of Venezuela who entered the United States without inspection on May 4, 2023, and was detained almost immediately.  (Doc. 6-1 at 2).  DHS determined he was subject to removal under 8 U.S.C. § 1182(a)(7)(i)(I) (alien not in possession of valid entry document).  (*Id*.).  On May 16, 2023, ICE enrolled Petitioner in the Alternatives to Detention ("ATD") program and required him to report to a scheduled appointment regarding his immigration case.  (Doc. 6-3).

On February 15, 2026, Florida patrol officers conducted a vehicle stop for a traffic violation and took Petitioner into custody after determining he was "illegally in the United States."  (Doc. 6-2 at 2).  At the time the Petition was filed, Petitioner remained detained in ICE custody at the California City Immigration Processing Center.  (*Id*. at 3).

////

////

_____

[2] In light of the Court's conclusion that Petitioner's re-detention was in violation of his procedural due process rights under the Fifth Amendment, and recommendation that Petitioner be released immediately, the Court declines to address Petitioner's additional claims for relief.

## II.    APPLICABLE LAW AND ANALYSIS

Under 28 U.S.C. § 2241(c)(3), a district court may grant a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." District courts retain jurisdiction under § 2241 to consider habeas challenges to immigration detention that are sufficiently independent of the merits of a removal order.  *Lopez-Marroquin v. Barr*, 955 F.3d 759, 759 (9th Cir. 2020) (citing *Singh v. Holder*, 638 F.3d 1196, 1211–12 (9th Cir. 2011)); *see also Jennings v. Rodriguez*, 538 U.S. 281, 294 (2018).

### A.  Statutory and Legal Framework

As background, the Court will briefly outline the statutory framework of detention authority under the INA, and the recent shift by Executive agencies in interpreting these statues.

### 1.  Mandatory Detention under 8 U.S.C. § 1225(b)

Section 1225(a)(1) provides that an alien present in the United States who has not been admitted, or who arrives in the United States, is deemed an "applicant for admission." Applicants for admission must be inspected by immigration officers consistent with U.S. immigration law. *Jennings*, 583 U.S. at 287 (quoting § 1225(a)(3)).  If an immigration officer determines that an arriving alien is inadmissible and the alien does not indicate an intention to apply for asylum or express a fear of persecution, the officer must order the alien removed without further hearing or review.  § 1225(b)(1)(A)(i); 8 U.S.C. § 1182(a)(7).  With certain exceptions, § 1225(b)(2)(A) directs that if am applicant for admission is not "clearly and beyond a doubt" entitled to be admission, "the alien *shall* be detained" for removal proceeding under 1229a.  § 1225(b)(2)(A) (emphasis added).  Applicants for admission may be released on parole only for :urgent humanitarian reasons or significant public benefit." *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A) and citing 8 C.F.R §§ 212.5(b), 235.3 (2017)).

////

////

////

////

////

3

## 2. Discretionary Detention under 8 U.S.C. § 1226(a)[3]

Section 1226(a) authorizes the arrest and detention of an alien pending a decision on removal, and grants the government broad discretion to continue detention or release the alien on bond or conditional parole.  § 1226(a); *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022) (citing 8 C.F.R. § 236.1(c)(8)).  Federal regulations provide that noncitizens detained under § 1226(a) receive bond hearings at the outset of detention, where they must show by a preponderance of the evidence that they are not a danger to the community or a flight risk. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. § 236.1(d)(1)); Matter *of Guerra*, 24 I.& N. Dec. 37, 40 (B.I.A. 2006); *Ortega-Cervantes v. Gonzales*, 501 F.3d 1111, 1115 (9th Cir. 2007).  After discretionary release under § 1226(a), the government may revoke bond or conditional parole and rearrest the noncitizen "at any time," but courts have held that rearrest must comply with constitutional constraints and generally requires a change in circumstances.  *M.R.R. v. Chestnut*, 2025 WL 3265446, at *3 (E.D. Cal. Nov. 24, 2025) (internal citations omitted); *Martinez Hernandez v. Andrews*, 2025 WL 2495756, at *10 (E.D. Cal. Aug. 28, 2025) (while allowing for rearrest at any time, "this does not mean that DHS may exercise its discretion in a manner that is inconsistent with constitutional requirements.").

DHS's ATD program provides supervised release and monitoring for a subset of noncitizens subject to removal who have been released into the United States and are not considered threat to public safety or national security.  *Audrey Singer*, Cong. Research Serv., R45804, Immigration: Alternatives to Detention (ATD) Programs 14 (July 8, 2019), https://sgp.fas.org/crs/homesec/R45804.pdf.

## 3. Government's Change in Position

Until 2025, DHS applied § 1226(a) and its discretionary release framework to most

---

[3] Section 1226(c) "carves out a statutory category of aliens who may *not* be released under § 1226(a)," mandating detention for an alien apprehended under § 1226 "who falls into one of several enumerated categories involving criminal offenses." *Jennings*, 583 U.S. at 289 (emphasis in original).  In January 2025, the Laken Riley Act ("LRA") amended § 1226(c) to add a new category of alien ineligible for release under § 1226(a), including aliens deemed "inadmissible" for being "present in the United States without being admitted or paroled," who have been arrested for, charged with, or convicted of certain crimes.  LRA, Pub. L. No. 119-1 (Jan. 29, 2025); *see* 8 U.S.C. § 1182(a)(6)(A)(i), § 1226(c)(1)(E).

4

noncitizens in the United States without valid documentation. *Salcedo Aceros v. Kaiser*, 2025 WL 2637503, at *3 (N.D. Cal. Sept. 12, 2025); *see also, e.g., Escobar Salgado v. Mattos*, 2025 WL 3205356, at *3 (D. Nev. Nov. 17, 2025) (citing *Inspection and Expedited Removal of Aliens*, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997). In July 2025, the DHS and DOJ adopted a new position that § 1225, instead of § 1226, governs detention of all applicants for admission, including aliens present in the United States "who has not been admitted," and that such individuals are subject to mandatory detention under § 1225(b) without bond hearings before an immigration judge, treating these aliens in the same manner that "'arriving aliens' have historically been treated." *See ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission*, American Immigration Lawyers Association (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission (last visited January 7, 2026). In September 2025, the BIA issued a precedential decision adopting this interpretation and holding that immigration judges lack authority to grant bond to noncitizens present in the United States without admission, because they are applicants for admission subject to § 1225(b)(2)(A). *See Matter of Yajure Hurtado*, 29 I&N Dec. 216 at *9.

### B. Due Process

The Fifth Amendment's Due Process Clause protects "persons" within the United States, including noncitizens, from deprivation of liberty without due process of law. *Trump v. J.G.G.*, 604 U.S. 670 (2025) (citing *Reno v. Flores*, 507 U.S. 292, 305 (1993)*; Zadvydas v. Davis*, 533 U.S. 678, 693-94 (2001). The scope of protection varies by immigration status and circumstance. *Zadvydas*, 522 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."). Once noncitizens enter the country, even unlawfully, they are entitled to due process protections, and the Due Process Clause generally requires some form of hearing before the government deprives a person of liberty. *Id*.; *see also Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) ("our immigration laws have long made a distinction between those aliens who have come to our shores seeking admission ... and those who are within the United States after an entry, irrespective of its

legality.  In the latter instance, the Court has recognized additional rights and privileges not extended to those in the former category who are merely 'on the threshold of initial entry.'*"); see also Zinermon v. Burch*, 494 U.S. 113, 127 (1990).

**C.  Claim Two: Procedural Due Process**

Petitioner claims his detention without a bond hearing violates his procedural due process rights.  (Doc. 1 at 6).  Respondents do not substantively address his due process arguments; they instead assert that, as an applicant for admission, he is subject to the mandatory detention under § 1225(b) and is ineligible for a bond hearing and has no right to freedom from detention beyond what Congress provides.  (Doc. 6).

As a threshold matter, this Court joins the majority of courts in holding that noncitizens previously released on conditional parole and later re-detained are not "applicants for admission" subject to mandatory detention under § 1225(b)(2)(A); rather, their detention continues to be governed by § 1226(a) during removal proceedings.  *See, e.g., Montero-Alvarez v. Alberran*, 2025 WL 3754116, at *4 (E.D. Cal. Dec. 29, 2025) (collecting cases); *C.A.R.V. v. Wofford*, 2025 WL 3059549, at *8 (E.D. Cal. Nov. 3, 2025); *Barco Mercado v. Francis*, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (collecting cases); *But see, e.g., Alonzo v. Noem*, 2025 WL 3208284, at *5 (E.D. Cal. Nov. 17, 2025); *Ramos v. Lyons*, 2025 WL 3199872 (C.D. Cal. Nov. 12, 2025).

Procedural due process requires the Court to determine (1) whether a protected liberty interest exists and, if so, (2) what process is due.  *See Morrissey v. Brewer*, 408 U.S. 471, 481 (1972); *Garcia v. Andrews*, 2025 WL 1927596, at *2 (E.D. Cal. July 14, 2025) (citing *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989)).  Respondents do not dispute that Petitioner was apprehended upon entering the country and subsequently released.  (*See* Doc. 6).  ICE initially has discretion under § 1226(a) to detain or release a noncitizen and may release the person if satisfied that release would not pose a danger or flight risk.  *Rodriguez Diaz*, 53 F.4th at 1196 (citing 8 C.F.R. § 236.1(c)(8)).  Thus, "[r]elease reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."  *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017), *aff'd sub nom*, *Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018); *Espinoza v. Kaiser*, 2025 WL 2675785, at *6 (E.D. Cal. Sept. 18, 2025).

When a noncitizen is released pending a final removal decision and complies with the conditions of release, courts have found a protected liberty interest in remaining out of custody. *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032-33 (N.D. Cal. 2025) (collecting cases). Here, Respondents do not argue Petitioner violated his conditions of release or the law, and the Court finds his release and time in the community created a protected liberty interest in continued release following conditional parole. *See Solano v. Robbins*, 2025 WL 3718831, at *6 (E.D. Cal. Dec. 23, 2025) (collecting cases); *Pinchi*, 792 F. Supp. 3d at 1033 ("These extensive relations of support and interdependence underscore the high stakes of [their] liberty.").

To determine what process is due, courts apply the three-factor balancing test outlined in *Mathews v. Eldridge*:[4] 424 U.S. 319, 335 (1976). First, the Court considers "the private interest that will be affected by the official action." *Id*. Petitioner's interest in remaining free from detention and maintaining community ties is substantial. *See Zadvydas*, 533 U.S. at 690 ("Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty [the Due Process] Clause protects."); *Hernandez v. Sessions*, 872 F.3d 976, 993 (9th Cir. 2017) (recognizing it is "beyond dispute" that the "private interest at issue here is 'fundamental'"); *see also Pinchi*, 792 F. Supp. 3d at 1033. Thus, Petitioner's private interest is heavily affected, and this factor weighs in favor of Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such an interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Because Petitioner received no pre-deprivation custody redetermination hearing, the risk of erroneous deprivation is high, and the value of a hearing before a neutral decisionmaker is significant, especially where Respondents make no argument that he is a flight risk or danger or that he did not appear timely and consistently for all hearings

---

[4] The Ninth Circuit has noted that the Supreme Court "when confronted with constitutional challenges to immigration detention has not resolved them through express application of *Mathews*." *Rodriguez Diaz*, 53 F.4th at 1206-07. However, in light of the consistent employment of *Mathews* by district courts in the Ninth Circuit in determining whether due process applies in the context of re-detention of previously paroled noncitizens, the Court proceeds to apply those factors while still reserving judgment on whether *Mathews* is an "all embracing test" when encountering due process challenges by immigrant detainees. *See A.E. v. Andrews*, 2025 WL 1424382, at *4 (citing *Dusenbury v. United States*, 534 U.S. 161, 168 (2002) ("we have never viewed *Mathews* as announcing an all-embracing test for deciding due process claims.").

7

in immigration court. *See A.E. v. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Third, the Court considers the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail." *Mathews*, 424 U.S. at 334. Unquestionably, the government has a significant national interest in enforcing its immigration laws. Indeed, it is a sovereign's fundamental right to control its borders, to protect national security, and ensure integrity in its immigration system. However, Respondents fail to explain how Petitioner threatens these interests or how the government's interest is weakened by affording him a hearing before a neutral decisionmaker. Nor do Respondents offer evidence of how affording a hearing results in either a fiscal or administrative burden, which has been found to be "minimal" by other courts. *See J.A.E.M. v. Wofford*, 2025 WL 3013377, at *7 (E.D. Cal. Oct. 27, 2025) (citing *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("In immigration court, custody hearings are routine and impose a 'minimal' cost."). Because Respondents did not provide Petitioner with notice or reasons prior to his re-detention, and have seemingly offered no reasoning in any proceedings, including this one before this Court, as to why that decision was made, the Court finds Respondents have failed to demonstrate a significant interest in Petitioner's detention. *See Noori v. LaRose*, 2025 WL 2800149, at *11 (S.D. Cal. Oct. 1, 2025); *A.E. V. Andrews*, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025), *report and recommendation adopted*, 2025 WL 1808676 (E.D. Cal. July 1, 2025).

On this record, the *Mathews* factors weigh in Petitioner's favor, and the Court concludes his re-detention without hearing violated his procedural due process rights.

**D. Conclusion and Remedy**

The remaining question is the appropriate remedy: pre-deprivation versus post-deprivation process. As previously reasoned by the assigned district judge,

> The Supreme Court has held that "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *See Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original). However, the Court also recognized that there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate. *Id.* at 128, 110 S.Ct. 975 (noting there may be "special case[s]" where a

pre-deprivation hearing is impracticable); *Guillermo M. R. v. Kaiser*, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025) ("absent evidence of urgent concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ"). The rapidly developing caselaw on this subject gives limited guidance as to where this line should be drawn. Some courts that have addressed detention-related habeas petitions brought by persons released with enhanced supervision conditions have required pre-deprivation process, but in somewhat different circumstances. In *E.A.T.-B. v. Wamsley*, No. C25-1192-KKE, 795 F.Supp.3d 1316, 2025 WL 2402130, at *4 (W.D. Wash. Aug. 19, 2025), the district court ordered the release of a petitioner arrested by ICE immediately after appearing in immigration court. That court agreed with the petitioner that ICE's post hoc explanation that violations warranted her detention was pretextual, given that ICE first became aware of petitioner's alleged violations a few hours before her immigration hearing, DHS did not raise those violations at the hearing or argue the petitioner should be detained for any reason, and the petitioner was then provided multiple, inconsistent justifications for her arrest. *Id*. In *Arzate v. Andrews*, No. 1:25-CV-00942-KES-SKO (HC), 2025 WL 2230521, at *7 (E.D. Cal. Aug. 4, 2025), converted to preliminary injunction sub nom, 2025 WL 2411010, at *1 (E.D. Cal. Aug. 20, 2025), the court ordered immediate release of in immigration detainee who had been in compliance with his conditions of release, even though he had incurred a misdemeanor arrest while on parole, in part because no charges were ever filed.

**\*12** In contrast, this Court ordered a bond hearing in *Martinez Hernandez v. Andrews*, No. 1:25-CV-01035 JLT HBK, 2025 WL 2495767 (E.D. Cal. Aug. 28, 2025), where the petitioner's records indicated numerous violations. Though Martinez Hernandez offered explanations for the violations and there was a dispute of fact as to whether the violations occurred, ICE's reliance upon those violations was "not obviously pretexual." *Id*. at * 12 ("If Respondent's view of the facts is correct, it is at least arguable that providing Petitioner with notice and a pre-deprivation hearing would have been impracticable and/or would have motivated her flight."). As this Court noted in *Martinez Hernandez*:

> In similar circumstances, courts have refused to release the petitioners but have ordered timely bond hearings. Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG (HC), 2025 WL 2381464, at *8 (E.D. Cal. Aug. 15, 2025), citing Perera v. Jennings, et. al, No. 21-CV-04136-BLF, 2021 WL 2400981, at *5 (N.D. Cal. June 11, 2021); Pham v. Becerra, No. 23-CV-01288-CRB, 2023 WL 2744397, at *6 (N.D. Cal. Mar. 31, 2023). "[A]llowing a neutral arbiter to review the facts would significantly reduce the risk of erroneous deprivation." Guillermo M. R. v. Kaiser, No. 25-CV-05436-RFL, 791 F.Supp.3d 1021, 2025 WL 1983677, at *8 (N.D. Cal. July 17, 2025). Thus, the Court concludes that prompt, post-deprivation process is required here.

*M.R.R.*, 2025 WL 3265446, at *11-12.

Here, Respondents offer no evidence that Petitioner violated any conditions of release, and they do not contend he is a flight risk or danger to the community.  (*See* Doc. 6).  The record contains no indication that his re-detention was based on any purported violation of any release conditions.  Under these circumstances, a pre-deprivation hearing was constitutionally required.

Accordingly, it is hereby RECOMMENDED:

1.   The Petition for Writ of Habeas Corpus (Doc. 1) be GRANTED.

2.   Respondents be directed to IMMEDIATELY release Petitioner from DHS custody on the conditions of his prior release.

3.   Once released, Respondents be PERMANENTLY ENJOINED AND RESTRAINED from rearresting or re-detaining Petitioner absent compliance with constitutional protections, including at a minimum, pre-deprivation notice of at least seven days and a pre-deprivation hearing at which the government bears the burden to show, by clear and convincing evidence, that Petitioner is likely to flee or pose a danger if not arrested.

4.   If legally sufficient circumstances justify arrest without notice in advance, a post-deprivation hearing consistent with the requirements SHALL be provided within seven days of the arrest. Alternatively, if Petitioner becomes subject to a final order of removal and Petitioner receives notice of that order, Respondent may detain him solely for executing removal but MUST provide a bond hearing within the timeframe required by law.

5.   This case be CLOSED.

### NOTICE OF EXPEDITED OBJECTIONS

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  **Given the recommendation to grant the petition in part, a party may file written objections with the Court within five (5) days of service of these Findings and Recommendations.**  *Id*.; Local Rule 304(b) (permitting court to set a different time).  The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations" and shall not exceed **fifteen**

10

**(15) pages**. The Court will not consider exhibits attached to the Objections. To the extent a party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations under 28 U.S.C. § 636(b)(l)(C). A party's failure to file any objections within the specified time may result in the waiver of certain rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014).


Dated:    June 11, 2026

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE

11